UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08668-SVW | Date | February 13, 2025 |
|---|---|---|---|
| Title | *Jane Roe EA 10 v. The Church of Jesus Christ of Latter-Day Saints et al.* | | |

Present: The Honorable  STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendants: |
|---|---|
| N/A | N/A |

**Proceedings:** ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [10]

## I. Introduction

Before the Court is Plaintiff Jane Roe EA 10's motion to remand. ECF No. 10. For the following reasons, Plaintiff's motion is GRANTED.

## II. Background

### A. Plaintiff's Claims

Plaintiff is an adult woman under the age of forty who alleges that, when she was a child, a church leader at the Church of Jesus Christ Latter-Day Saints ("LDS church"), Arthur Stout, sexually abused her. *See generally* Complaint, ECF No. 1-2. On September 4, 2024, Plaintiff brought negligence and related claims against (1) the Church of Jesus Christ of Latter-Day Saints (the "Church"), (2) Temple Corporation of the Church of Jesus Christ of Latter-Day Saints (the "Temple Corporation"), and (3) the Palmdale California Stake (the "Palmdale Stake" and, collectively, "Defendants"). ECF No. 1-2. Generally, the thrust of Plaintiff's allegations is that Defendants owed a duty to protect Plaintiff from sexual abuse from Arthur Stout, and that they breached that duty by continuing to allow Stout to have access to children. *Id.*

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08668-SVW | Date | February 13, 2025 |
|---|---|---|---|
| Title | *Jane Roe EA 10 v. The Church of Jesus Christ of Latter-Day Saints et al.* | | |

### B. The Palmdale Stake

The Church consists of a hierarchal structural. At the top, the highest governing body of the Church is the "First Presidency." The First Presidency is made up of the President of the Church (also known as the Prophet) and two Counselors, who assist the President in overseeing the Church. Compl. ¶ 19. Below the First Presidency is the Quorum of the Twelve Apostles. *Id.* ¶ 20. Below them is the Quorum of the Seventy, which exists to assist the Quorum of the Twelve Apostles in overseeing, directing, and managing local leadership. *Id.* ¶ 20. There are 12 Quorums of the Seventy, and each is assigned to a designated geographic location. *Id.* ¶ 22. These geographic locations are referred to by the Church as an "Area." *Id.*

Each Area is comprised of Stakes. *Id.* ¶ 23. And within each Stake are multiple "Wards." *Id.* ¶ 23. Wards are the actual congregations where members of the Church worship. Declaration of Branden Wilson ("Wilson Decl.") ¶ 6, ECF No. 12-7. Each Ward is led by a Stake President, who has various supervisory responsibilities. For example, Stake Presidents oversee committees and church programs, they oversee Sunday School organization, they oversee the records, finances, and property within their stake, they nominate Bishops (the person in charge of a Ward) for approval by the First Presidency, and they ordain elders and high priests.[1] And, relevant to this case, they are charged with addressing matters of child sexual abuse. *Id.* ¶ 35.[2]

### C. Removal to Federal Court

The Church of Jesus Christ of Latter-Day Saints (the "Church") is a Utah corporation with its principal place of business in Utah. Notice of Removal ¶ 6, ECF No. 1. Similarly, the Temple Corporation of The Church of Jesus Christ of Latter-day Saints (the "Temple Corporation") is a Utah domestic nonprofit corporation with its principal place of business in Utah. *Id.* ¶ 7. The Palmdale Stake is a religious

---

[1] *See* Declaration of Lauren A. Welling ("Welling Decl.") Ex. 2, General Handbook: Serving in the Church of Jesus Christ of Latter-Day Saints, Chapter 6 §§ 6.1, 6.21.1.4, 6.2.4, 6.4.1 (August 2023); Welling Decl. Ex. 3, Kim S. Cameron, "Stake President Stake Presidency," in *Latter-day Saint Essentials: Readings from the Encyclopedia of Mormonism.*

[2] *See also* the Stake Presidents and Bishops Handbook, available at https://www.churchofjesuschrist.org/study/manual/general-handbook/38-church-policies-and-guidelines?lang=eng#title_number92

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08668-SVW | Date | February 13, 2025 |
|---|---|---|---|
| Title | *Jane Roe EA 10 v. The Church of Jesus Christ of Latter-Day Saints et al.* | | |

entity and subsidiary of the Church that is based in California. Compl. ¶ 7. Plaintiff, too, resides in California. *Id.* ¶ 3. Accordingly, assuming all three defendants were properly named, there is no complete diversity in this case—both Plaintiff and the Palmdale Stake are citizens of California.

Despite this facial lack of complete diversity, the Church removed the case to this Court on October 8, 2024. ECF No. 1. The Church argued that the Palmdale Stake "is a non-existent legal entity that was fraudulently joined and should be disregarded for removal jurisdiction." Notice of Removal ¶ 12. With the Palmdale Stake out of the picture, there would be complete diversity between Plaintiff and the remaining Defendants, meaning that removal was proper as the Court would have diversity jurisdiction over the case.[3]

Plaintiff now moves to remand, arguing that the Palmdale Stake was a properly named Defendant, and that correspondingly there is no complete diversity between the parties and thus no diversity jurisdiction. ECF No. 10.

### III. Legal Standard

"Federal courts are courts of limited jurisdiction . . . ." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994)). As such, a federal court can only exercise jurisdiction over actions where a federal question exists, or where there is (1) complete diversity of citizenship between the parties and (2) the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332.

Pursuant to 28 U.S.C. § 1441(a), "a defendant may remove any action filed in state court if a federal district court would have had original jurisdiction." *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648 (9th Cir. 2021). The Ninth Circuit strictly construes the removal statute against removal, and jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance. *Gaus v. Miles, Inc.*, 980 F.2d 564, 565 (9th Cir. 1997). Accordingly, there is a strong presumption against

---

[3] The parties do not dispute that the amount in controversy is over $75,000.

|  |  | : |
|---|---|---|
|  | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08668-SVW | Date | February 13, 2025 |
|---|---|---|---|
| Title | *Jane Roe EA 10 v. The Church of Jesus Christ of Latter-Day Saints et al.* | | |

removal jurisdiction that results in the defendant shouldering the burden of establishing that removal is proper. *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n.3 (9th Cir.1990); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir.1988)). The burden includes "actually proving the facts to support jurisdiction, including the jurisdictional amount." *Id.* (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

**IV.   Discussion**

Plaintiff's motion for remand turns on one question: has the Church met its burden of proving that the Palmdale Stake was a fraudulently joined defendant? If the answer is yes, then there is complete diversity between the parties, and removal was proper. If the answer is no, then there is no complete diversity, and the Court must remand the case.

"Diversity removal requires complete diversity, meaning that each plaintiff must be of a different citizenship from each defendant." *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018). "In determining whether there is complete diversity, district courts may disregard the citizenship of a non-diverse defendant who has been fraudulently joined." *Id.*

"Where fraudulent joinder is an issue . . . [t]he defendant seeking removal to federal court is entitled to present facts showing the joinder to be fraudulent." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). "There are two ways to establish fraudulent joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability to establish a cause of action against the non-diverse party in state court." *Grancare, LLC*, 889 F.3d at 548. "Fraudulent joinder must be proven by clear and convincing evidence." *Hamilton Materials Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).

Showing an inability to establish a cause of action against the non-diverse party requires "show[ing] that an individual joined in the action cannot be liable on any theory." *Grancare, LLC*, 889 F.3d at 548. "[I]f there is [even] a *possibility* that a state court would find the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to state court." *Id.* (emphasis in original). Indeed, the failure to state a claim against the

|  |  | : |  |
|---|---|---|---|
|  | Initials of Preparer | PMC | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08668-SVW | Date | February 13, 2025 |
|---|---|---|---|
| Title | *Jane Roe EA 10 v. The Church of Jesus Christ of Latter-Day Saints et al.* | | |

non-diverse defendant must be "obvious according to the well-settled rules of the state." *United Computer Systems v. AT&T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002). These high standards reflect the principle that "a defendant invoking federal diversity jurisdiction on the basis of fraudulent joinder bears a heavy burden since there is a general presumption against finding fraudulent joinder." *Grancare, LLC*, 889 F.3d at 548. (quotations omitted) (cleaned up).

Here, the Church contends that the Palmdale Stake was fraudulently joined because it is "a non-existent legal entity" and thus there is no legal basis to bring suit against it. *See* Notice of Removal ¶¶ 9-12. In other words, the Church argues that the Palmdale Stake is fraudulently joined because it "cannot be liable on any theory" brought by Plaintiff. *See Grancare*, 889 F.3d at 548.

To be sure, "an unincorporated division of a corporation does not possess the formal separateness required and is therefore not an independent entity for jurisdictional purposes." *L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 939 (C.D. Cal. 2011) (citing *Breitman v. May Co. Calif.*, 37 F.3d 562, 564 (9th Cir. 1994) (affirming diversity jurisdiction existed because an unincorporated division did not possess independent citizenship)).

But that does not mean that all unincorporated entities are improper defendants. Quite the contrary, "[a] partnership or other unincorporated association, whether organized for profit or not, may sue and **be sued** in the name it has assumed or by which it is known." Cal. Code Civ. Proc. § 269.5(a) (emphasis added). Indeed, "[g]roups which have been unincorporated associations" include "labor unions, . . . political parties, . . . social clubs, religious organizations, environmental societies, athletic organizations, condominium owners, lodges, stock exchanges[,] and veterans." *Barr v. Methodist Church*, 90 Cal. App. 3d 259, 266 (1979).

Accordingly, the question of fraudulent joinder boils down to one legal issue: has the Church sufficiently established that there is no "possibility" that a California court would find that the Palmdale Stake is an unincorporated association subject to legal suit? *See Grancare, LLC*, 889 F.3d at 548. Analysis of the evidence and law demonstrate that the answer is no, Defendants have not met their burden.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08668-SVW | Date | February 13, 2025 |
|---|---|---|---|
| Title | *Jane Roe EA 10 v. The Church of Jesus Christ of Latter-Day Saints et al.* | | |

**A. Under applicable California law, a California court *could* find that the Palmdale Stake is an unincorporated association.**

To start, no California state court has tackled the question of whether a plaintiff can bring claims against an unincorporated Stake of the LDS church. This alone demonstrates that the law in this area is not "well-settled" such that there is at least some "possibility that a state court would find" that the Palmdale Stake is a legal entity subject to suit. *See Computer Systems*, 298 F.3d at 761 ("well-settled"); *Grancare*, 889 F.3d at 549 ("possibility that a state court would find").

Without on point case law, a California court would answer the question of whether the Palmdale Stake was an unincorporated association by applying the two-step inquiry established in *Barr v. Methodist Church*, 90 Cal. App. 3d 259, 266 (1979). There, the California Court of Appeals held that "[t]he criteria applied to determine whether an entity is an unincorporated association are no more complicated than (1) a group whose members share a common purpose, and (2) who function under a common name under circumstances where fairness requires the group be recognized as a legal entity." *Barr*, 90 Cal. App. 3d at 266. "Fairness includes those situations where persons dealing with the association contend their legal rights have been violated. Formalities of quasi-corporate organization are not required." *Id.* at 266-67.

While California courts have never applied this test to a Stake of the LDS Church, the court in *Church Mut. Ins. Co., S.I. v. GuideOne Specialty Mut. Ins. Co.*, 72 Cal. App. 5th 1042, 1059 (2021) applied *Barr*'s two-step inquiry to a local congregation of a similarly hierarchal church and held that yes, the local congregation was a distinct legal entity. In that case, the California Court of Appeal considered whether Mountain Lakes, an unincorporated "local congregation of the hierarchical Church of God," was a separate legal entity from the Church of God itself, which was an incorporated religious organization. *Id.* at 1056. Like the LDS Church in this case, "the Church of God is a hierarchical church with a central governing body, the International General Assembly, exercising control over all matters of church doctrine, governance, practice, discipline, and property ownership at all structural levels of the church, including the state regional level and the local level." *Id.* at 1061. To determine whether Mountain Lakes was a separate legal entity, the court applied the two-step inquiry from *Barr*. *Id.* at 1059.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08668-SVW | Date | February 13, 2025 |
|---|---|---|---|
| Title | *Jane Roe EA 10 v. The Church of Jesus Christ of Latter-Day Saints et al.* | | |

The *GuideOne Specialty* court ultimately held that the local congregation was a separate legal entity, as there could "be no doubt that the members of the Mountain Lakes congregation shared a common purpose and functioned under a common name under circumstances where fairness requires the group to be recognized as a legal entity." *Id.* In so holding, the court highlighted that "Mountain Lakes was given authority to act on the Church of God's behalf in purchasing the church property at issue in this case." *Id.* at 1063. Relevantly, the court expressly held that the Church of God "exercising control over all matters of church doctrine, governance, practice, discipline, and property ownership at all structural levels of the church" "[did] not establish that the Church of God . . . and Mountain Lakes [were] a singular legal entity," instead holding that such control "establish[ed] an agency relationship between [those] two separate legal entities." *Id.* at 1061. In short, the Church of God's control over the local congregation did not automatically prohibit the congregation from being a separate legal entity. *See id.*

Given *GuideOne Specialty*'s holding and the lack of any other relevant case law, a California Court could certainly find that the Palmdale Stake satisfies *Barr*'s two-step test for being an unincorporated association—i.e., that the Palmdale Stake is (1) "a group whose members share a common purpose" and (2) "who function under a common name under circumstances where fairness requires the group be recognized as a legal entity." *See Barr*, 90 Cal. App. 3d at 266. First, the members of the Palmdale Stake— i.e., the President of the Stake and the members of the individual wards that reside within it—share a common purpose of worshiping the Mormon religion and furthering its goals. Or, as the "General Handbook" for "serving in the Church of Jesus Christ of the Latter-Day Saints" puts it, "[m]embers and leaders in a stake work together to participate in God's work of salvation and exaltation." *See* Welling Decl. Ex. 2, Chapter 6 of the General Handbook: Serving in the Church of Jesus Christ of Latter-Day Saints ("General Handbook").

Second, a California court could find that the members of the Palmdale Stake "function under a common name under circumstances where fairness requires the group be recognized as a legal entity." *Barr*, 90 Cal. App. 3d at 266. To start, it is certainly conceivable that a court could find that members of the Palmdale Stake function under the Palmdale Stake name. After all, the Palmdale Stake has its own records, finances, and properties. General Handbook at 2. Stakes like the Palmdale Stake also organize their own committees and church programs. *Id.* at 4. These are all examples of the Palmdale Stake

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08668-SVW | Date | February 13, 2025 |
|---|---|---|---|
| Title | *Jane Roe EA 10 v. The Church of Jesus Christ of Latter-Day Saints et al.* | | |

"function[ing] under a common name." *See Barr*, 90 Cal. App. 3d at 266.

Moreover, a California court could also find that fairness requires the Palmdale Stake be recognized as a legal entity. Stakes have far more control over the Wards and members under its supervision than the overall LDS Church corporation. Stakes, through their Presidents, select the Bishops in charge of each Ward and ordain Elders and High Priests. Welling Decl. Ex. 3. Stake leadership also oversees Church committees and church programs. *Id.* And, as mentioned above, Stakes manage their own records, finances, and properties. *Id.*

In short, Stake leadership, through its selection of the leaders of individual LDS churches and its oversight of committees, manages much of what goes on within a Stake's geographical area. It is therefore individual Stakes, rather than the Church's larger corporate form, that are best suited to prevent sexual abuse in the Church. Indeed, the LDS Church's general handbook explicitly states that preventing, detecting, and reporting child abuse is one of a Stake's responsibilities.[4] Given this dynamic, a California court could certainly find that fairness demands that sexual assault victims be able to bring suit directly against a Stake such as Palmdale. After all, the Stake is far more responsible for the abuse than the Church's overall corporate form, whose leaders mostly reside in Utah. If a Stake creates or perpetuates an environment where sexual abuse is possible, it is reasonable to find that fairness demands holding that entity legally responsible.

And while it is certainly true that much of the Palmdale Stake's operations are controlled by the LDS church, that does not automatically render the Stake an "unincorporated division" of the Church's corporate form. The court in *GuideOne Specialty* expressly rejected that argument. There, the court held that the unincorporated local congregation was a separate legal entity from the Church of God even though the Church of God "exercise[ed] control over all matters of church doctrine, governance, practice, discipline, and property ownership at all structural levels of the church." *GuideOne Specialty*, 72 Cal. App. 5th at 1061. Accordingly, just as the Church of God's exercise of control over the local congregation did not render the two a singular legal entity, the LDS Church's exercise of control over the Palmdale

---

[4] *See* General Handbook: Serving in the Church of Jesus Christ of Latter-day Saints §§ 38.6.2.1, 38.6.2.3.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08668-SVW | Date | February 13, 2025 |
|---|---|---|---|
| Title | *Jane Roe EA 10 v. The Church of Jesus Christ of Latter-Day Saints et al.* | | |

Stake does not render the Stake and the Church singular legal entities either. *See id.*

To be sure, there are meaningful differences between the facts of *GuideOne Specialty* and this case. In *GuideOne*, the local congregation purchased property on behalf of the Church of God, while the Palmdale Stake owns no property at all. *Id.* at 1059. But the *GuideOne Specialty* court did not hold that owning property was a prerequisite to finding that an entity was an unincorporated association. *See id.* at 1059-60. Rather, the court merely applied the two-step inquiry from *Barr* and found that the local congregation's purchase of property was relevant to that analysis. *See id.* So while the Palmdale Stake does not own any property, this in no way means that a California Court could not nonetheless apply the test in *Barr* and conclude, based on the reasons the Court has already explained, that the Palmdale Stake fits the criteria of an unincorporated association subject to legal suit.

To be clear, the Court is not saying that if it was analyzing the available evidence and making its own determination, that it would find that the Palmdale Stake is an unincorporated association rather than a division of the Church's corporate form. In fact, Defendant's evidence might very well survive a preponderance of the evidence standard. After all, Stakes are created by LDS Church leadership in Utah, Stake Presidents are selected by that same leadership, and those Presidents cannot resign without Church leadership's permission. Wilson Decl. ¶¶ 9, 24. Stake leadership is also instructed to follow guidelines and rules set by LDS Church leadership and are generally held accountable to the General Authority.[5] And while Stakes certainly manage the property and financial matters within their geographic area, they do not actually own any of it—the property and money belongs to the Church. *Id.* ¶ 20.

"But the standard is not whether the current weight of the evidence or allegations are sufficient to survive a motion to dismiss or motion for summary judgment." *Hargraves v. Church of Jesus Christ of Latter-Day Saints*, No. 24-cv-00500-SHE, 2024 WL 5040926, at *3 (N.D. Okla. Dec. 9, 2024) (finding no fraudulent joinder because "Defendants have not proved 'with complete certainty' that Plaintiff cannot prevail against" the allegedly fraudulently joined defendant). Indeed, "the test for fraudulent joinder and

---

[5] The "General Authority" is the formal name of LDS Church leadership. It is made up of the First Presidency, the 12 Apostles, and the Quorum of the Seventy. Welling Decl. Exs. 2, 3.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08668-SVW | Date | February 13, 2025 |
|---|---|---|---|
| Title | *Jane Roe EA 10 v. The Church of Jesus Christ of Latter-Day Saints et al.* | | |

for failure to state a claim under Rule 12(b)(6) are not equivalent." *Grancare*, 889 F.3d at 549. Rather, the question for the Court is whether "there is a *possibility* that a [California] court" could find that the Palmdale Stake is an unincorporated association capable of being sued. *See Grancare, LLC*, 889 F.3d at 548 (emphasis in original). As explained above, the answer to that question is clearly yes—a California court could possibly find that the Palmdale Stake meets the unincorporated association criteria set out in *Barr*. So while Defendant's argument may have carried some weight on a summary judgment or motion to dismiss standard, it does not satisfy "its heavy burden" of establishing fraudulent joinder. *See id.*

### B. The federal district court decisions cited by the Church are not persuasive.

In recent months, multiple district courts in the Ninth Circuit have tackled the exact question at issue in this case: whether bringing claims against an unincorporated Stake of the LDS constitutes fraudulent joinder. Four of these courts held that the answer to that question was yes and denied remand. For the following reasons, the Court is not persuaded by these cases.

**First**, that federal district courts have held that an unincorporated Stake of the LDS Church is not a separate legal entity has no bearing on the central question before this Court: whether "there is a *possibility* that a [*California*] court would find that" an unincorporated Stake is subject to suit. *See Grancare*, 889 F.3d at 549 (first emphasis in original, second emphasis added). California state courts do not look to federal district courts when deciding questions of law, and thus these federal court decisions do not affect the Court's conclusion that a California court *could* find that the Palmdale Stake is an unincorporated association under *Barr*. *See supra* Section IV(A).

**Second**, the Court does not find the reasoning of these district courts persuasive. The Court will address each in turn.[6]

---

[6] It appears that a large number of cases against the LDS Church are making their way through the federal courts, each one evaluating the question of remand. While the Court believes it has identified the relevant cases, it is entirely possible that very recent cases addressing this issue are omitted from this order. This is, however, inconsequential, as a federal district court's conclusion on this issue is not relevant to the question of whether a *California* court could possibly find that Plaintiff established a claim against the Palmdale Stake.

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08668-SVW | Date | February 13, 2025 |
|---|---|---|---|
| Title | *Jane Roe EA 10 v. The Church of Jesus Christ of Latter-Day Saints et al.* | | |

### 1. Roe JW 142

Up first is *Roe JW 142 v. Church of Jesus Christ of Latter-Day Saints*, No. 24-cv-2150-KK, 2024 WL 5182415, at *2 (C.D. Cal. Dec. 20, 2024). In *Roe JW 142*, the court concluded that the LDS Stake was "not an independent entity for jurisdictional purposes" solely because the Stake was "part of defendant LDS' network for churches and is subject to defendant LDS' control." *Id.* at *2.

But being part of a church's network and being under the control of a Church's hierarchal leadership does not automatically render an entity a corporate division of the larger church under California law. *See GuideOne Specialty*, 72 Cal. App. 5th at 1061 (holding that a local unincorporated congregation was a separate legal entity from the Church of God's corporate form even though the Church of God "exercise[ed] control over all matters of church doctrine, governance, practice, discipline, and property ownership at all structural levels of the church"). Moreover, the *Roe JW 142* court failed to apply the *Barr* two-step test for unincorporated associations or any other applicable California cases related to the legal status of unincorporated religious organizations. The Court thus does not find *Roe JW 142* to be a compelling reason to hold that there is *no possibility* that a California court would find that the Palmdale Stake is an unincorporated association subject to legal suit.

### 2. Roe AJ 1

The next case holding that LDS Stakes are not legal entities is *Roe AJ 1 v. Church of Jesus Christ of Latter-Day Saints*, No. 2:24-cv-02990-DC, 2025 WL 268882, at *3 (E.D. Cal. Jan. 22, 2025). *Roe AJ 1* first based its holding on Plaintiff's allegation that the LDS Stake was "a religious entity and subsidiary of the Church of Jesus Christ of Latter-Day Saints." *Id.* at *2. But, as explained above, being a subsidiary of a church's corporate form does not automatically turn an unincorporated religious entity into a corporate division incapable of being sued. *See GuideOne Specialty*, 72 Cal. App. 5th at 1061.

*Roe AJ 1* next reasons that "Plaintiff . . . does not cite to any authority on point to support his

| | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08668-SVW | Date | February 13, 2025 |
|---|---|---|---|
| Title | *Jane Roe EA 10 v. The Church of Jesus Christ of Latter-Day Saints et al.* | | |

position that Defendant Napa Stake should be treated as an independent entity independent from Defendant LDS Church." 2025 WL 26882, at *2. But here, the court misstates the burden on plaintiff. When evaluating whether a defendant is fraudulently joined, it is the defendant, not the plaintiff, that "bears [the] heavy burden" of establishing that the plaintiff cannot establish a cause of action against the purportedly fraudulent defendant. *Grancare*, 889 F.3dd at 548.

Finally, *Roe AJ 1* holds that the Stake is not a separate legal entity because it "is controlled by Defendant LDS as one of its many places of worship." 2025 WL 26882, at *3. In support of its reasoning, *Roe AJ 1* does not cite California case law, but rather cites *Roe JW 142*. Accordingly, for the same reasons the Court is not persuaded by the reasoning in *Roe JW 142*, it is also unpersuaded by the reasoning in *Roe AJ 1*.

### 3. *Roe SR 3*

The third case finding that LDS Stakes are not legal entities is *Jane Roe SR 3 v. The Church of Jesus Christ of Latter-Day Saints*, No. 24-cv-07119-EJD, 2025 WL 339162, at *3 (N.D. Cal. Jan. 30, 2025). In making its holding, *Roe SR 3* highlighted that the Stake at issue "operates according to the policies and procedures in the General Handbook of the Church," and "is not separately incorporated," "not registered to do business anywhere," "does not own property," and "is funded by the Church." *Id.* at *3. While these may indeed be valid reasons to find, on the merits, that an LDS stake is not a separate legal entity, it is insufficient to hold there is **no possibility** that a California court would find that the Palmdale Stake is an unincorporated association subject to legal suit. *See Grancare*, 889 F.3d at 549 ("[A] federal court must find that a defendant was properly joined and remand the case to state court if there is a *possibility* that a [California] court would find that the complaint states a cause of action."). This deficiency is highlighted by the fact that *Roe SR 3* cites no California case law in its reasoning, instead citing to *Roe AJ 1* and *Roe JW 142*, the two cases discussed above. *See* 2025 WL 339162, at *2-*3.

To its credit, unlike *Roe AJ 1* and *Roe JW 142*, *Roe SR 3* addresses *GuideOne Specialty* and attempts (in this Court's view, unpersuasively) to distinguish it. *Roe SR 3* argues that the unincorporated congregation in *GuideOne Specialty* purchased property and ultimately voted to disaffiliate itself from the

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08668-SVW | Date | February 13, 2025 |
|---|---|---|---|
| Title | *Jane Roe EA 10 v. The Church of Jesus Christ of Latter-Day Saints et al.* | | |

larger church, while the Stake in *Roe SR 3* did not purchase property and did not vote to disaffiliate itself. *Id.* at *3. While these are certainly valid differences between LDS stakes and the unincorporated congregation in *GuideOne Specialty*, these differences do not support finding that there is no possibility a California Court could find that an LDS stake was a separate legal entity. As the Court explained above, *GuideOne Specialty* did not hold that owning property and voting to disassociate from the larger Church were prerequisites for finding separate legal status. Rather, *GuideOne Specialty* simply applied the *Barr* two-step inquiry and found they supported a finding of separate legal status. For the reasons already stated, it is certainly *possible* that a California court could do the same in this case even without the Palmdale Stake owning property. Moreover, even if the ability to purchase property or dissociate from the larger church organization were dispositive of separate legal status, the Church (the party bearing the burden of proof) presents no evidence that LDS stakes are incapable of taking such actions.

The difference between this Court's reasoning and that of *Roe SR 3* is aptly summarized by a footnote in *Roe SR 3*'s opinion, where the *Roe SR 3* court notes that: "Plaintiff makes much about Defendants' burden is asserting fraudulent joinder. But the threshold issue is whether the Morgan Hill Stake is an independent entity capable of being sued—fraudulently or not." 2025 WL 339162, at *1 n.1. This is, however, not the question at issue when evaluating fraudulent joinder. When evaluating fraudulent joinder, federal courts do not decide whether, based on weighing of all the available evidence, an LDS stake is a separate legal entity, as it might if the issue presented itself in a motion to dismiss. Instead, courts must determine "if there is a *possibility* that a [California] court would find" that the LDS stake is a separate legal entity. *Id.* So while the Church's level of control over LDS stakes and the differences between LDS stakes and the congregation in *GuideOne Specialty* may be sufficient to support *Roe SR 3*'s holding on a motion to dismiss, these facts do not sufficiently satisfy the "heavy burden" of establishing fraudulent joinder. *See id.*; *see also Grancare*, 889 F.3d at 549 ("[T]he test for fraudulent joinder and for failure to state a claim under Rule 12(b)(6) are not equivalent.").

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08668-SVW | Date | February 13, 2025 |
|---|---|---|---|
| Title | *Jane Roe EA 10 v. The Church of Jesus Christ of Latter-Day Saints et al.* | | |

### 4. *Jane Roe MB 69*

The fourth and final case[7] finding that LDS Stakes are not legal entities is *Jane Roe MB 69 v. Doe 1*, No. 8:24-cv-02395-JVS, 2025 WL 415344, at *4 (C.D. Cal. Feb. 6, 2025). *Jane Roe MB 69*, like the cases before it, based its holding on the level of control the Church exerted over the Stake, failed to cite to California case law, and instead cited to the similarly flawed district court cases described above. *Id.* at *4. Accordingly, for the same reasons the Court was not persuaded by the first three district court cases described above, it is not persuaded by the fourth.

### C. It is not obvious according to the well-settled rules of California that Plaintiff cannot bring suit against the Palmdale State.

To establish fraudulent joinder, the Church needs to establish that it is "obvious according to the well-settled rules of the state" that Plaintiff cannot state a claim against the Palmdale State. *See United Computer Systems*, 298 F.3d at 761. Accordingly, even if the Court did consider the recent federal district court decisions discussed above, they would still be insufficient to establish fraudulent joinder, as there is considerable disagreement on this issue among the district courts.

As a threshold matter, there are no California cases directly tackling the question of whether an LDS Stake is an independent legal entity capable of being sued. This alone undermines the Church's contention that this legal question is "well-settled."

Even moving beyond California cases to federal ones, there is disagreement among the courts. As described above, four federal district courts (*Roe JW 142*, *Roe AJ 1*, *Roe SR 3*, *Jane Roe MB 69*) have considered this question and held (for reasons this Court disagrees with) that LDS stakes are not separate

---

[7] The Court notes that *Roe LM 89 v. Doe 1*, No. 24-cv-83590JFW, 2025 WL 212143, at *3 (C.D. Cal. Jan. 16, 2015) also tackles the issue other whether an LDS stake was fraudulently joined. That court, however, denied remand because "there [were] no allegations in the Complaint that Plaintiff ever belonged to or attended a congregation that was part of the [stake at issue]." The court thus did not tackle the larger legal question of whether an LDS stake is an independent entity subject to legal suit. It is thus not relevant to the Court's analysis.

| | : | |
|---|---|---|
| | Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08668-SVW | Date | February 13, 2025 |
|---|---|---|---|
| Title | *Jane Roe EA 10 v. The Church of Jesus Christ of Latter-Day Saints et al.* | | |

legal entities. But a fifth court, *Roe KL 66 v. Doe 1*, No. 24-cv-07661-AMO, 2024 WL 5264039, at *1 (N.D. Cal. Dec. 31, 2024), held the opposite, and "reject[ed] the arguments by [the LDS Church] that . . . a 'Stake' . . . is merely a subpart of the church . . . [and] not a separate legal entity that may be sued." *Id.* In denying the Church's fraudulent joinder argument and granting remand, the *Roe KL 66* court cited *GuideOne Specialty*, the California appellate case holding that an unincorporated religious congregation was an unincorporated association capable of being sued.

Another district court case, *Geppert v. Church of Jesus Christ of Latter-Day Saints, Inc.*, No. 23-cv-05763, 2024 WL 495255 (N.D. Nov. 16, 2023), also rejected the Church's fraudulent joinder argument on slightly different but nonetheless analogous facts. There, the plaintiff brought negligence and related claims related to alleged sexual assault by the LDS church. *Id.* at *1. The court considered whether one of the named defendants—the Corporation of the President of the San Jose Stake of the Church of Jesus Christ of Latter-Day Saints ("the San Jose Stake Corporation")—was fraudulently joined. *Id.* The *Geppert* court held that there was no fraudulent joinder, reasoning that: (1) there was not sufficient evidence to show that the plaintiff intentionally added the Stake Corporation as a sham defendant; and (2) the LDS Church did not show that the plaintiff had no possibility of prevailing on its negligence claims against the Stake Corporation. *Id.* at *3.

Certainly, the facts of *Geppert* do not perfectly match those of this case, as the San Jose Stake Corporation is incorporated, and the Palmdale Stake is not. But importantly, the *Geppert* court did not base its reasoning on the fact that the San Jose Stake Corporation was incorporated. *See id.* Rather, the court simply analyzed each element of negligence and found that it was possible that the plaintiff could prevail against the San Jose Stake Corporation on each one. *See id.* Moreover, in rejecting the Church's fraudulent joinder argument, the *Geppert* court implicitly rejected the Church's argument that it is settled law that Stakes are corporate divisions not capable of being sued. Indeed, if a Stake is so deeply within the Church's control that it is "obviously" considered a corporate division of the Church, then surely the corporation of the Stake President—who is appointed by the Church and allegedly under its direction—would also be considered a corporate division of the Church. But *Geppert* did not make that holding. Rather, *Geppart* held the Stake Corporation was a properly named defendant. *See id.*

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:24-cv-08668-SVW | Date | February 13, 2025 |
|---|---|---|---|
| Title | *Jane Roe EA 10 v. The Church of Jesus Christ of Latter-Day Saints et al.* | | |

The conflict between *Roe KL 66* and *Geppert* on the one hand, and *Roe JW 142*, *Roe AJ 1*, *Roe SR 3*, and *Roe MB 69* on the other, directly undermines the Church's argument that it is "obvious according to the well-settled rules of the state" that Stakes are corporate divisions of the Church not capable of being sued. After all, if it was settled law, then district courts tasked with analyzing California law would not come to different conclusions on this issue. Accordingly, "because of the unsettled nature of State law, the Court must construe ambiguities in favor of remand." *See Tomback v. UnumProvident Corp.*, No. 05-cv-3157, 2005 WL 2596449, at *8 (N.D. Cal. Oct. 13, 2005). The Court thus finds that the Palmdale Stake was not fraudulently joined.

V.   **Conclusion**

For the foregoing reasons, the Court GRANTS Plaintiff's motion to remand. This case is thus remanded back to California state court.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | PMC |